Judge Underwood,
delivered the opinion of the court.
This is a suit in chancery, in which it is necessary to decide the merits of the following entries which conflict. “Thomas Montgomery enters two, thousand three hundred and thirty-one acres of land, Beginning at Byrd’s road, on the north side of the south fork of Licking, running thence down the north side of said fork, two miles, when reduced to a straight line, thence extending from each end of said line a northwardly course for quantity, January, 27,1783.”
“Edmund Singleton enters three thousand acres of land on a treasury warrant, &c. on the south fork of Licking, on both sides of the creek, including both the bottoms below the road, that the English made when they took Ruddell’s Station, and running down the creek for quantity, January 2, 1783.”
Kenton filed his bill, asserting an equity derived under the entry in the name of Montgomery. Coleman’s heirs rely for protection upon the entry in the name of Singleton and the elder patent based on that entry.
If Singleton’s entry is valid, being the eldest, it must prevail so far as it has been surveyed in conformity to the entry, Byrd’s road and the road made by the English when they took Ruddell’s Station are only different names or descriptions given to the same road. That this road by either name or description, and the south fork of Lick-, ing were notorious at the date of both entries, there cannot be a doubt. The point where the road crossed the stream was notorious and easily to be found at the dates of the entries. This point constituted the beginning of Montgomery’s entry, and when it was as *45 eertained,no subsequent locator cculd be at a loss as to the shape his survey should assume. We are of opinion, his survey was properly made, and that his entry is valid.
uBoth the hoi* toms below the road” construed to mean the two bottoms next to the road.
If Singleton’s entry is not valid, it results from the uncertainty there exists, in distinguishing the two bottoms intended by the entry from any other bottoms on the south fork of Licking, below the road. We are of opinion, that there is no difficulty in ascertaining with certainty and precision, the bottoms intended.
The expression “both the bottoms below the road” mean the two bottoms upon the stream next to the road. The definite article was used and the road was referred to in the entry, for the purpose of designating these bottoms, and it seems to us, that no one could well mistake the intention of the locator. If he had meant to include any bottoms below the road and above the mouth of the stream, his language would have differed from that used. Including both the houses on the Kentucky river, below the bridge in Frankfort, in common parlance would be understood in the same manner, as if the word next were inserted in the sentence before the word below. We cannot indulge in criticisms upon the language used by the early adventurers in Kentucky. They understood the use of the rifle, much better than the construction of sentences. If their language pointed out with reasonable certainty what they meant, it is all that should be asked from them. In this case, it js sufficiently apparent that the bottoms next to the road, were those which Singleton intended to include and then, that he designed to extend his survey down the stream for quantity. The principles recognized in the case of Feam, &c. vs. Taylor, IV Bibb, 363, in construing the entry there relied on by the appellants, tend strongly to fortify us in the conclusion, that the bottoms next to the road are pointed out with sufficient certainty by the entry in this case. It follows, that the entry of Singleton is as valid as the entry of Montgom-; pry, and being prior in date, must prevail, so far as the survey has been made in conformity to it. The survey, however, as laid down on the connexion made by J. B, Curry, upon which the lands claimed by Coleman’s heirs is designated, does not conform to the entry. The bottoms meant by the locator, do pot both lie on the *46 same,side of the stream, as the counsel for the plaintiff' in error supposes. The bottoms intended, according to our construction of the entry, are designated on the plat and connexion by Nos. 1 and 4, these being the two bottoms on the river or creek nighest the crossing of the road and below it. Bottom, No. 3, was not intended. It is clear, that the whole of the bottoms meant, were to be included, and that all of the bottoms lay below the road. To include the whole of bottom No. 3, it would be necessary to extend the survey above the road which would be inconsistent with the entry.
Entry to He “on the south fork of Licking on both sides of the creek including both the bottoms below the road that the English made when they took Ruddle’s Station, and running down the creek for quantity,” must be surveyed in a square,
Viewing the stream and bottoms as laid down upon the plat a square figure ought not to have been departed from. Neither the position of the bottoms, nor the meanders of the water course required that the survey should assume any other shape than a square. The side of a square survey to include three thousand acres would be a portion more than six hundred and ninety two and eight-tenth poles in lenth. Now to lay off the land,, three thousand acres, in conformity to the entry; the south fork of Licking, should be meandered from the commencement of the first bottom below the road, designated by the letter I on the plat, descending until the general course of the stream'from any point of said first bottom on the river, to a point, six hundred and ninety two, and eight-tenth poles below, could be ascertained. Then the most southwardly point of the first bottom should be assumed for the beginning of a base line in which to construct the survey. From said beginning, a line should be run down the river to the highest point on the stream which shall be distant six hundred and ninety-two and eight-tenth poles from the beginning, when reduced to a straight line.'
From the ends of this line, lines should be run at right angles on both sides of the river, so far, that lines parallel to the base will include the quantity. These parallel lines would be three hundred and forty six and four-tenth poles, and a fraction distant from the base line, regulated and fixed as above, by the general course of the river. If, however, when the base line is located as above directed, it should be found, that to run at right angles northeastwardly or eastwardly, would cross the river and take in a part of the bottom, No. 3, this must be avoided by running up the river with its mean *47 clers to the intersection of the line so directed to be run at right angles with the base and thence with it the proper distance. Whatever number of acres would have been taken by running at right angles out of bottom, No. 3, must be divided and the lines parallel to the base must be thrown so much farther from it as will include the quantity, half on each side the base.
Affidavit that heirs are unknown is m lsPensa e'
So, also, if it should be found, that the western boundary of the survey when run parallel to the base, should cross the river into bottom, No. 2, then the eastern parallel line must approximate the base so near as to permit the western to be thrown out, so as to include the whole of the river. The foregoing directions for surveying the entry, are deductions from the principles acted on in Green, &c. vs. Watson, I Bibb, 107, and Calk and Rear vs. Stribling, Ibid, 123, keeping in view the intention of the locator, in respect to the bottoms to be included, and to lie on both sides of the creek. To all the land covered by the entry of Montgomery, not included by a survey on Singleton’s entry when made as above, the defendant in error may have an equity paramount to the elder grant produced on Singleton’s entry, as surveyed, but to all the land which may be included within a survey, as directed and common to the survey, as made on Singleton’s entry, those claiming under Singleton’s entry should be protected. We have thus deemed it proper to settle the merits of the controversy, because, upon the merits, the decree of the circuit court must be reversed.
We must, moreover, remark, that the complainant in the circuit court should have made affidavit, that the heirs of Thomas Montgomery were unknown to him. His failure to do so, renders the proceedings against them invalid and erroneous. As Thomas Montgomery or his heirs are indispensable ’ parties, this error is calculated to effect the whole case. Upon the return of the cause, steps may yet be taken to bring them properly before the court; see Blight’s heirs vs. Banks, &c., VI Mon. 222. We are also of opinion, that a partition of the lands between Kenton and Montgomery’s heirs should have been made before the defendants in the circuit court, were required to release their legal title, and that the release should only have extended to the land assigned to Kenton, for which he may have established the superior equity.
Mills and Brown, for plaintiffs; Crittenden, for defendant.
Decree reversed, and causo remanded, for proceedings in conformity to this opinion.
The plaintiffs in error must recover costs.